Rec# 150021300 25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN STEELE,
Plaintiff,

v.

UNITED WHOLESALE MORTGAGE, LLC,
Defendant.

______________________________________/

Case: **4:26-cv-12446**
Assigned To : **Behm, F. Kay**
Referral Judge: **Grand, David R.**
Assign. Date : **7/17/2026**
**STEELE V. UNITED WHOLESALE MORTGAGE, LLC (CMC)**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Steele, by and through the filing set forth below, states as follows for his Complaint against Defendant United Wholesale Mortgage, LLC:

## I. INTRODUCTION

1. This is a civil action for damages and other relief arising from unlawful race discrimination by Defendant United Wholesale Mortgage, LLC ("UWM" or "Defendant") against Plaintiff John Steele, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

2. Plaintiff was employed by Defendant until his termination from employment.

3. Plaintiff alleges Defendant subjected him to disparate treatment on the basis of race.

4. Defendant failed to apply its disciplinary policies consistently as between Plaintiff and similarly situated employees outside his protected class.

5. Plaintiff alleges Defendant terminated his employment under circumstances giving rise to a reasonable inference of race discrimination.

6. Plaintiff has satisfied all conditions precedent to bringing this action, including exhaustion of his administrative remedies before the EEOC, as alleged below.

7. Plaintiff seeks declaratory, equitable, and monetary relief, including compensatory and punitive damages, and demands a trial by jury on all issues so triable.

8. Plaintiff brings this action because he believes Defendant imposed substantially more severe discipline upon him than was imposed on similarly situated employees outside his protected class for comparable workplace conduct.

9. Plaintiff further alleges that Defendant's decision to terminate his employment

departed from the coaching, corrective-action, and employee-development practices Defendant represented to employees during Plaintiff's employment, and that Defendant imposed substantially more severe discipline upon Plaintiff than upon similarly situated employees outside Plaintiff's protected class for comparable workplace conduct.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

11. This Court has supplemental jurisdiction over Plaintiff's related Michigan state-law claim pursuant to 28 U.S.C. § 1367, because that claim arises from the same nucleus of operative facts as Plaintiff's federal claims.

12. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and the events giving rise to Plaintiff's claims occurred in this District.

13. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), received a Notice of Right to Sue (attached as Exhibit A), and has satisfied all administrative prerequisites applicable to his Title VII claim.

14. Plaintiff files this action within the time permitted following receipt of the EEOC

Notice of Right to Sue.

## III. PARTIES

### Plaintiff

15. Plaintiff, John Steele ("Plaintiff"), is an adult resident of the State of Michigan.

16. Plaintiff was employed by Defendant United Wholesale Mortgage, LLC as a Business Analyst beginning on or about October 13, 2023, and remained employed until his termination on or about April 3, 2024.

17. Throughout his employment, Plaintiff performed the duties assigned to him and was qualified for the position he held.

### Defendant

18. Defendant United Wholesale Mortgage, LLC ("UWM") is a Michigan limited liability company conducting business within the State of Michigan, including within the Eastern District of Michigan.

19. At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964 because it employed the statutory minimum number of employees required for coverage under the Act.

20. At all relevant times, Defendant acted through its officers, directors, managers, supervisors, human resources personnel, employees, and agents, each acting within the course and scope of their employment or authority.

21. Whenever this Complaint refers to acts committed by Defendant, those allegations include the acts of Defendant's officers, managers, supervisors, employees,

agents, and representatives acting on Defendant's behalf.

## IV. FACTUAL ALLEGATIONS

### A. Hiring and Employment

22. Plaintiff applied for employment with Defendant United Wholesale Mortgage, LLC, seeking a position as a Business Analyst.

23. Defendant extended Plaintiff an offer of employment, which Plaintiff accepted.

24. Plaintiff began his employment with Defendant on or about October 13, 2023, as a Business Analyst.

25. Plaintiff accepted Defendant's offer of employment and commenced his duties as a Business Analyst.

26. During the course of his employment, Plaintiff successfully completed onboarding requirements and began performing the duties assigned to him as a Business Analyst.

27. Plaintiff remained willing and able to perform the essential functions of his position throughout his employment.

28. Plaintiff accepted employment with Defendant only after applying on multiple occasions because he viewed the position as a significant opportunity to establish a long-term career in corporate technology. Plaintiff intended to remain employed with Defendant, continue developing professionally, and advance within the organization. Plaintiff alleges that his termination abruptly interrupted that career trajectory and adversely affected his future earning capacity.

**B. Background Check / Onboarding Issues**

29. Approximately one to two weeks after Plaintiff began his employment, Defendant removed Plaintiff from the workplace, together with his personal belongings, and sent him home.

30. Defendant informed Plaintiff that a felony conviction had been identified during the pre-employment background investigation.

31. Plaintiff immediately disputed the accuracy of that information because it did not belong to him.

32. Plaintiff's employment was interrupted for approximately one week while the matter was resolved.

33. During that time, Plaintiff personally contacted the background screening company to dispute the erroneous information.

34. Plaintiff personally obtained documentation demonstrating that the felony record did not pertain to him.

35. The background screening company subsequently corrected its records.

36. Defendant thereafter allowed Plaintiff to return to work.

37. Plaintiff returned to work after the screening company corrected the error and resumed performing his assigned duties.

38. Rather than abandoning the position, Plaintiff immediately took affirmative steps to resolve the background screening error by contacting the screening company himself, obtaining documentation establishing that the criminal record belonged to another individual, and providing the necessary information so the error could be

corrected.

39. Plaintiff's successful efforts to resolve the issue and return to work reflected his commitment to preserving his employment with Defendant.

**C. Training and Early Employment**

40. During the early stages of Plaintiff's employment, Plaintiff was not consistently assigned a full workload by his team.

41. Defendant made classes and training sessions available to employees, including Plaintiff, covering various skills and subject matters.

42. Because Plaintiff had limited work assigned to him at that time, Plaintiff enrolled in a number of these classes.

43. Plaintiff was subsequently instructed to reduce the number of classes he attended and to spend more time with his team.

44. Plaintiff complied with that instruction immediately.

45. Plaintiff subsequently took on additional roles and responsibilities within his team, voluntarily accepting additional work outside his originally assigned responsibilities as his experience grew.

46. Plaintiff assisted with quality assurance functions and other team initiatives despite those duties not being part of his original assignment.

47. Plaintiff also coordinated team engagement activities designed to promote morale and collaboration among coworkers.

48. Plaintiff regularly met with coaches to discuss his performance and professional development, and raised questions regarding his work assignments and training

opportunities in an effort to improve his performance and contribute effectively.

49. During those coaching sessions, Plaintiff received positive feedback and was advised that management had heard favorable reports regarding his performance and contributions.

50. Plaintiff remained committed to succeeding in his position and continued performing the duties assigned to him until the date of his termination.

51. Plaintiff had a significant financial incentive to maintain his employment because participation in Defendant's Forgivable Loan and Restricted Stock Unit Program depended upon continued employment. Plaintiff therefore had every reason to preserve his employment and continue performing successfully.

**D. Workplace Events and Disparate Treatment**

*Communication with Leadership*

52. Plaintiff was assigned to work in connection with Defendant's "UZone" application, an internal company platform.

53. In connection with his assigned work on that platform, and seeking to contribute constructively to a product he had been assigned to support, Plaintiff emailed Defendant's Chief Executive Officer, Mat Ishbia, to ask whether there were any specific changes Mr. Ishbia personally wished to see implemented that had not otherwise been communicated to his subordinates.

54. Mr. Ishbia responded courteously to Plaintiff by voice message, thanking Plaintiff for reaching out and advising him to use the appropriate chain of command in the future.

55. Plaintiff was never reprimanded or disciplined for contacting Mr. Ishbia directly.

56. Following that communication, Plaintiff perceived that certain members of management interacted differently with him. Plaintiff does not contend that the communication itself was the reason for his termination, but alleges it forms part of the factual chronology preceding the events at issue.

*Workplace Culture*

57. Defendant's workplace included a common practice of informal joking and humor among employees.

58. Defendant's management encouraged team bonding and social interaction among employees.

59. Plaintiff was specifically encouraged by management to be more friendly and social with his team in order to adapt to the workplace culture.

60. Plaintiff attempted to adapt to that culture as encouraged by management.

61. Plaintiff observed coworkers engaging in informal joking, teasing, practical jokes, and other non-serious interactions without disciplinary action.

*Comparator Treatment*

62. Plaintiff observed a workplace culture in which employees, including white coworkers, commonly engaged in joking, teasing, and informal humor without apparent consequence or termination.

63. Plaintiff observed other employees engage in workplace conduct that Plaintiff believed was similar to or more serious than the conduct later attributed to Plaintiff.

64. Upon information and belief, employees outside Plaintiff's protected class who engaged in comparable workplace conduct were not subjected to termination under similar circumstances, and Defendant applied its disciplinary policies and workplace conduct standards inconsistently based upon race.

65. Plaintiff expects discovery to identify the specific employees, disciplinary histories, and decision-makers relevant to these allegations.

*Race and Workplace Environment*

66. Plaintiff observed relatively few Black employees working within Defendant's technology department as compared to other departments within the company.

67. Plaintiff's experiences during his employment led him to believe he was held to a different standard than certain coworkers.

68. Plaintiff contends that Defendant's disciplinary response to Plaintiff's conduct was substantially more severe than the response Plaintiff believed would have been imposed on a similarly situated employee outside Plaintiff's protected class.

**E. Workplace Incident and Termination**

69. During Plaintiff's employment, Defendant conducted training sessions in which employees from various departments spoke with new Business Analysts regarding their roles and responsibilities.

70. During one such training session in approximately October 2023, Plaintiff drew a simple sketch of one of the presenters during the meeting.

71. Plaintiff showed the drawing to the presenter in the presence of others and asked whether he liked it.

72. The presenter and those present laughed about the drawing, and the interaction concluded without discipline, complaint, or further discussion.

*The Later Incident*

73. Several months later, while attending a meeting with members of Plaintiff's team, Plaintiff again made a simple shoulder-up sketch of a coworker while the meeting was taking place.

74. The drawing did not depict nudity, intimate body parts, sexual activity, or any sexually explicit content.

75. Plaintiff showed the drawing to the coworker in the presence of the team and asked whether she liked it.

76. The coworker laughed and responded that the drawing was not good.

77. Plaintiff jokingly responded that he thought it looked good and joked that he would make copies of it and post it around the office.

78. The conversation ended, the meeting concluded, and Plaintiff believed the matter had ended.

79. The coworkers present also laughed at the exchange.

80. Plaintiff observed no indication that the coworker appeared frightened, intimidated, offended, or uncomfortable.

81. At the time of this incident, Plaintiff had been working to improve his performance, had received coaching intended to develop his skills, had been entrusted with additional responsibilities, and believed he was developing positive working relationships with members of his team.

82. Plaintiff reasonably believed the workplace interaction had concluded without incident based upon the coworker's response, the reaction of those present, and the absence of any immediate indication that Defendant viewed the interaction as warranting termination.

*Termination*

83. Later that day, Plaintiff's supervisor instructed Plaintiff to attend a meeting and advised him that he did not need to bring his personal belongings.

84. Upon entering the meeting, Plaintiff found his supervisor, a Human Resources representative, and a member of Defendant's security staff already present.

85. Later that same day, on or about April 3, 2024, Plaintiff was informed that his employment was being terminated.

86. Plaintiff was informed that the incident had been reported to Human Resources. Plaintiff believes a manager identified to him as Kevin participated in that process, although the nature and extent of that participation remain within Defendant's knowledge.

87. Plaintiff repeatedly asked what had occurred and requested an explanation.

88. Plaintiff was told only that the matter involved "sexual harassment."

89. Plaintiff was not provided an opportunity to discuss the incident before the termination decision was communicated.

90. Plaintiff was not provided a written explanation identifying the specific policy allegedly violated.

91. Plaintiff was not provided written disciplinary documentation before the

termination.

92. Plaintiff did not receive formal termination paperwork at the time his employment ended.

93. Plaintiff was immediately escorted from Defendant's premises.

94. Plaintiff's personal belongings had already been collected by Defendant and were waiting for him near the building exit.

**F. Pretext**

95. Plaintiff contends that Defendant's stated basis for his termination was pretextual.

96. Plaintiff is informed and believes that Defendant reached the decision to terminate his employment without conducting a fair or complete investigation into the incident or providing Plaintiff an opportunity to present his account before the decision became final.

97. Plaintiff is unaware that Defendant interviewed him regarding the allegations before making the termination decision, despite Plaintiff's repeated requests during the termination meeting to understand the basis for the decision.

98. In support of that contention, Plaintiff alleges that he was not afforded progressive discipline prior to his termination.

99. Plaintiff alleges Defendant departed from its ordinary disciplinary practices by imposing immediate termination without lesser corrective measures.

100. Plaintiff was not given a meaningful opportunity to explain the incident before the termination decision was made.

101. Plaintiff is not aware of any meaningful investigation having been conducted prior

to his termination.

102. Plaintiff was not provided written notice identifying the specific policy he was alleged to have violated.

103. Plaintiff alleges, upon information and belief, that similarly situated employees outside his protected class were treated more leniently for comparable conduct.

104. Plaintiff contends the severity of the discipline imposed was disproportionate to the conduct at issue when viewed in light of the workplace environment Plaintiff observed during his employment.

105. Plaintiff had received coaching, accepted corrective feedback, voluntarily assumed additional responsibilities, and believed he was making substantial progress immediately prior to his termination.

106. Plaintiff therefore reasonably believed that, consistent with Defendant's stated practices, any concerns would be addressed through coaching or corrective measures rather than immediate termination.

**G. Consequences of Plaintiff's Termination**

107. As part of Defendant's Forgivable Loan and Restricted Stock Unit Program, Plaintiff was entitled to receive periodic disbursement payments contingent upon his continued employment through a three-year vesting period.

108. Plaintiff had accepted participation in that program believing he would continue his employment and satisfy the applicable vesting requirements.

109. Plaintiff received the disbursement check, in the approximate amount of $15,000, while still employed. Later that same day, after Defendant terminated Plaintiff's

employment, Defendant placed a stop-payment on the check before Plaintiff was able to negotiate it.

110. Following Plaintiff's termination, Defendant separately demanded repayment of the forgivable employment-related loan Plaintiff had received as part of that same program.

111. Defendant asserted that Plaintiff's separation from employment triggered an obligation requiring Plaintiff to immediately repay the outstanding balance of the loan.

112. Defendant subsequently initiated legal proceedings seeking to recover the alleged debt from Plaintiff.

113. As a direct consequence of Defendant's decision to terminate Plaintiff's employment, Plaintiff lost his employment income, employee benefits, the disbursement check described above, and became subject to Defendant's demand for repayment of the employment-related loan.

114. Defendant's demand for repayment, together with the stop-payment on the disbursement check, significantly increased the financial consequences of Plaintiff's termination and compounded the economic damages suffered by Plaintiff.

115. Plaintiff has incurred substantial financial hardship, litigation expenses, and other costs in defending against Defendant's efforts to recover the alleged debt.

116. Plaintiff alleges that the financial injuries described herein were a foreseeable consequence of Defendant's decision to terminate Plaintiff's employment.

117. Plaintiff continues to suffer economic damages, emotional distress, reputational

harm, and other losses resulting from Defendant's actions, including the loss of an early-career opportunity in the technology industry.

118. Plaintiff contends the termination interrupted the early stages of his professional career in the technology industry and adversely affected future employment opportunities.

119. Plaintiff had viewed his employment with Defendant as his entry into the corporate technology industry. Plaintiff alleges that the termination disrupted that career path and required him to rebuild his professional career elsewhere.

120. Defendant's actions have required Plaintiff to expend significant time and resources protecting his legal rights in multiple legal proceedings arising from the termination of his employment.

121. Plaintiff has requested categories of documents and information relevant to Defendant's employment decisions, disciplinary practices, and termination process, including personnel files, comparator discipline records, investigative files, and electronic communications, in order to determine the factual basis for Defendant's actions.

122. Relevant documents and communications concerning Plaintiff's employment and termination are believed to remain within Defendant's possession, custody, or control.

123. Plaintiff alleges that information concerning Defendant's disciplinary practices, treatment of similarly situated employees, promotion practices, and workplace culture is largely within Defendant's possession and expects discovery to reveal additional evidence concerning those matters.

124. Throughout his employment, Plaintiff consistently acted to preserve and improve his employment by complying with management's instructions, seeking coaching, voluntarily assuming additional responsibilities, and attempting to integrate into the workplace culture as encouraged by Defendant. Plaintiff alleges those efforts make the severity and immediacy of his termination particularly significant.

**H. Administrative Proceedings**

125. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

126. The EEOC issued Plaintiff a Notice of Right to Sue.

127. Plaintiff timely filed this action following his receipt of that Notice.

128. Plaintiff repeats and realleges all preceding allegations as though fully set forth herein.

## COUNT I

## Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)

129. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

130. Plaintiff is an African American male and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

131. At all relevant times, Defendant was an employer subject to Title VII.

132. Plaintiff was qualified for the Business Analyst position he held and was capable of performing the essential duties of that position.

133. Plaintiff suffered an adverse employment action when Defendant terminated his employment on or about April 3, 2024.

134. Defendant's decision to terminate Plaintiff occurred under circumstances giving rise to a reasonable inference of unlawful race discrimination.

135. Plaintiff alleges that Defendant applied workplace rules, disciplinary standards, and employment policies inconsistently by treating similarly situated employees outside Plaintiff's protected class more favorably under comparable circumstances.

136. Plaintiff further alleges that Defendant failed to apply progressive discipline consistently and instead subjected Plaintiff to immediate termination.

137. Defendant's stated and actual reasons for Plaintiff's termination are within Defendant's possession and control and are presently known to Defendant.

138. Defendant's actions were intentional, willful, reckless, or undertaken with deliberate indifference to Plaintiff's federally protected rights.

139. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages including lost wages, lost employment opportunities, loss of benefits, emotional distress, humiliation, embarrassment, financial hardship, and other compensable damages.

140. Defendant's conduct violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count I, and award Plaintiff all relief set forth in the Prayer for Relief below.

## COUNT II

## Race Discrimination in Violation of 42 U.S.C. § 1981

141. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully restated herein.

142. Section 1981 guarantees all persons within the United States the same right to make, perform, modify, enforce, and enjoy the benefits of contractual relationships as enjoyed by white citizens.

143. At all relevant times, Plaintiff maintained a contractual employment relationship with Defendant.

144. Defendant intentionally interfered with Plaintiff's contractual employment relationship by subjecting Plaintiff to unequal treatment and terminating Plaintiff's employment under circumstances giving rise to a reasonable inference of race discrimination.

145. Plaintiff alleges that Defendant did not provide Plaintiff the same terms, conditions, privileges, opportunities, and protections of employment that were afforded to similarly situated employees outside Plaintiff's protected class.

146. Defendant's actions impaired Plaintiff's ability to enjoy the full benefits of his employment relationship with Defendant.

147. Defendant's conduct was intentional and was undertaken because of Plaintiff's race or under circumstances from which intentional race discrimination may reasonably be inferred.

148. As a direct and proximate result of Defendant's actions, Plaintiff suffered economic losses, emotional distress, loss of employment opportunities, and other damages recoverable under 42 U.S.C. § 1981.

149. Defendant's conduct violated Plaintiff's rights guaranteed by 42 U.S.C. § 1981.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count II, and award Plaintiff all relief set forth in the Prayer for Relief below.

## COUNT III

## Race Discrimination in Violation of the Michigan Elliott-Larsen Civil Rights Act

**(ELCRA), MCL 37.2202 et seq.**

150. Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully restated herein.

151. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Michigan Elliott-Larsen Civil Rights Act.

152. Defendant was an employer subject to the provisions of the Michigan Elliott-Larsen Civil Rights Act.

153. Plaintiff is a member of a protected class based upon his race.

154. Plaintiff was qualified to perform the essential duties of his position as a Business Analyst.

155. Defendant terminated Plaintiff's employment and otherwise subjected Plaintiff to unequal terms, conditions, privileges, and opportunities of employment.

156. Plaintiff alleges that Defendant treated similarly situated employees outside Plaintiff's protected class more favorably under similar circumstances.

157. Defendant's disciplinary response to Plaintiff's workplace conduct, including the decision to terminate Plaintiff without progressive discipline, occurred under circumstances giving rise to a reasonable inference that race was a motivating factor in Defendant's employment decision.

158. Defendant's actions constituted discrimination with respect to Plaintiff's employment because of Plaintiff's race in violation of the Michigan Elliott-Larsen Civil Rights Act.

159. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff

suffered loss of income, loss of employment benefits, emotional distress, humiliation, embarrassment, financial hardship, damage to future earning capacity, and other damages recoverable under Michigan law.

160. Plaintiff is entitled to all relief authorized by the Michigan Elliott-Larsen Civil Rights Act.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count III, and award Plaintiff all relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Steele respectfully requests that this Court enter judgment in his favor and against Defendant United Wholesale Mortgage, LLC, and award the following relief:

a. Back pay and lost benefits;

b. Front pay, or reinstatement in lieu thereof;

c. Compensatory damages for emotional distress, humiliation, and other consequential harm;

d. Punitive and/or exemplary damages as permitted by law;

e. Pre-judgment and post-judgment interest;

f. Reasonable costs of this action;

g. A declaratory judgment that Defendant's conduct violated Title VII, 42 U.S.C. § 1981, and the Michigan Elliott-Larsen Civil Rights Act;

h. Such other equitable relief as the Court deems appropriate;

i. Attorney's fees and costs to the extent authorized by applicable law;

j. Such other and further relief as this Court deems just and proper.

k. Any other relief authorized by Title VII, 42 U.S.C. § 1981, or the Michigan Elliott-Larsen Civil Rights Act.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Dated: 7/17/26

[signature]

John Steele

14134 Archdale Street

Detroit, MI 48227

(313) 704-1654

itsthepluglc@gmail.com

Plaintiff, Pro Se

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
Patrick V. McNamara Building
477 Michigan Avenue, Room 865
Detroit, MI 48226
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: April 22, 2026

**To:** John Steele
14134 Archdale Street
Detroit, MI 48227

**Re:** John Steele v. UNITED WHOLESALE MORTGAGE
EEOC Charge Number: 23A-2024-00892

EEOC Representative and email: Yvonne Allen
State, Local, and Tribal Coordinator
yvonne.allen@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the determination that substantial weight has been accorded to the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Ramiro Gutierrez – April 22, 2026
Ramiro Gutierrez
Field Office Director

cc: Brieana Segobiano
HR Manager
United Wholesale Mortgage
585 South Boulevard East
Pontiac, MI 48341

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
John Steele

(b) County of Residence of First Listed Plaintiff:
Wayne County, Michigan
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) Attorneys (Firm Name, Address, and Telephone Number)**
John Steele (Pro Se)
14134 Archdale, Detroit, MI 48227
(313) 704-1654 | itsthepluglIc@gmail.com

**DEFENDANTS**
United Wholesale Mortgage, LLC

County of Residence of First Listed Defendant:
Oakland County, Michigan
(IN U.S. PLAINTIFF CASES ONLY)

**II. BASIS OF JURISDICTION**

☐ 1 U.S. Government Plaintiff ☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity

**IV. NATURE OF SUIT**

**CIVIL RIGHTS**

☒ 442 Employment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 2000e et seq. (Title VII); 42 U.S.C. § 1981

Brief description of cause:
Race discrimination and wrongful termination in employment. Supplemental state-law claim under the Michigan Elliott-Larsen Civil Rights Act pursuant to 28 U.S.C. § 1367.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ ___________ (amount to be determined; see Prayer for Relief in Complaint)

JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY:**
None pending in this District.

DATE: ______________________

SIGNATURE OF ATTORNEY OF RECORD:

________________________________
John Steele, Plaintiff, Pro Se

**PURSUANT TO LOCAL RULE 83.11**

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☒ Yes ☐ No

If yes, give the following information:

**Related State Court Case: Oakland County Circuit Court**

United Wholesale Mortgage, LLC v. John Steele
Case No. [insert case number]

Nature of case: Civil action seeking repayment of an employment-related forgivable loan following Plaintiff's termination. Plaintiff's federal action asserts employment discrimination claims arising from the same employment relationship.

*NOTE: This cover sheet was prepared to match the content and layout of the official JS 44 (E.D. Mich. version). Before filing, cross-check against the fillable PDF at mied.uscourts.gov/PDFFIles/JS44_CivilCover_PDF.pdf and confirm the Oakland County case number/judge.*